United States District Court
Southern District of Texas
FILED

MAR - 9 2020

David J. Bradley, Clerk

United States District Court
Southern District of Texas

**ENTERED**

March 09, 2020

David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| JOSE ALBERTO GUTIERREZ | § | |
| | § | |
| Petitioner, | § | |
| | § | CIVIL ACTION NO. 7:18-CV-287 |
| VS. | § | |
| | § | |
| LORIE DAVIS, | § | |
| | § | |
| Respondent. | § | |

## REPORT AND RECOMMENDATION

Petitioner Jose Alberto Gutierrez, a state prisoner proceeding pro se, initiated this action by filing a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket No. 1.) In 2008, Petitioner was convicted of driving while intoxicated and sentenced to twenty years' confinement in the Institutional Division of the Texas Department of Criminal Justice (TDCJ). In seeking federal habeas corpus relief, Petitioner does not challenge his conviction or sentence, but rather his claims address four decisions of the Texas Board of Pardons and Paroles to deny his release to discretionary mandatory supervision.

Respondent has moved for summary judgment, arguing that Petitioner's claims should be dismissed because they are partially successive, partially time-barred, partially unexhausted, and without merit. (Docket No. 8.) Petitioner has filed objections to the motion. (Docket No. 20.)

After carefully considering the pleadings in this case, the record, and the applicable law, the undersigned concludes that the § 2254 petition should be denied. As explained further below, Petitioner's due process rights were not violated, and his claims should be dismissed as meritless. Accordingly, it is recommended that Respondent's motion for summary judgment be granted and that this action be dismissed.

## I. BACKGROUND

In 2008, a grand jury in the 175th Judicial District Court of Bexar County, Texas, returned an indictment in Cause No. 2008-CR-1186, charging Petitioner with driving while intoxicated. (Docket No. 10-3, at 22.) Petitioner pleaded guilty to the charge and received a 20-year prison sentence.[1] (See Docket No. 10-3, at 28–33, 96–97.)

On February 3, 2016, the Texas Board of Pardons and Paroles (the Board) informed Petitioner that he had been denied release to discretionary mandatory supervision (also referred to as "DMS"). (Docket No. 9-1, at 2.) The Board listed five reasons for its decision:

9D1.  The record indicates that the offender's accrued good conduct time is not an accurate reflection of the offender's potential for rehabilitation.

9D2.  The record indicates that the offender's release would endanger the public.

1D.  The record indicates that the offender has repeatedly committed criminal episodes that indicate a predisposition to commit criminal acts upon release.

3D.  The record indicates excessive substance use involvement.

5D.  The record indicates unsuccessful periods of supervision on previous probation, parole, or mandatory supervision that resulted in incarceration, including parole-in-absentia.

(Id.) In addition to its February 3, 2016, decision denying release to DMS, the Board has denied Petitioner release to discretionary mandatory supervision three additional times: on December 15, 2016, November 3, 2017, and August 13, 2018, respectively. (See id. at 3–5.) Petitioner was denied release on each of these occasions for the same reasons stated in the February 3, 2016, denial notice. (See id. at 3–5.)

---

[1] This was Petitioner's third DWI conviction. Publicly available online records show that his two prior DWI convictions were on September 25, 2000, and June 5, 2003, respectively. *See Offender Information Search*, Texas Dep't of Criminal Justice, https://offender.tdcj.texas.gov/OffenderSearch/start.action (last visited Feb. 10, 2020).

On February 9, 2016,[2] Petitioner filed a state application for writ of habeas corpus,

challenging his underlying DWI conviction and the Board's February 3, 2016, decision denying

release to DMS.[3] (*See* Docket No. 13-2, at 75, 90.)  Petitioner appears to have challenged the

February 3, 2016, Board decision on Eighth and Fourteenth Amendment grounds.  (*Id.* at 75, 90.)

On July 27, 2016, the Texas Court of Criminal Appeals dismissed the application as subsequent.[4]

(Docket No. 12-22, at 1.)

On September 10, 2018, the Clerk docketed Petitioner's instant federal petition for writ of

habeas corpus pursuant to 28 U.SC. § 2254, challenging the Board's four decisions denying release

to discretionary mandatory supervision.  (*See* Docket No. 1.)  Although Petitioner's § 2254 petition

and accompanying memoranda are not models of clarity, Petitioner's main arguments challenging

the Board's decisions may be broadly construed as follows:

- Petitioner's due process rights under the Fourteenth Amendment were violated because the Board's decisions to deny release to discretionary mandatory supervision are arbitrary and capricious;
- Petitioner has been denied an in-person appearance before the Board;
- The Board "does not apply nor recognize all accumulated TDCJ good & work time for eligible-DMS-parole release"; and

---

[2] Petitioner signed his writ on February 9, 2016, which is the earliest possible date that it could be considered filed. (*See* Docket No. 13-2, at 86.)

[3] It appears that, to date, Petitioner has filed approximately 21 state post-conviction proceedings. (*See generally* Docket Nos. 11, 12, 13, 14.)  Of these 21 proceedings, Respondent argues that only the February 9, 2016, application attempted to challenge a decision by the Board. (*See* Docket No. 8, at 4–5, 18–19.)

[4] As noted by Respondent, Petitioner filed another state habeas application on September 19, 2016. (*See* Docket No. 13-5, at 20.)  As also noted by Respondent, Petitioner did *not* challenge the Board's February 3, 2016, decision denying his release to DMS in this state application; instead, it appears Petitioner attempted to challenge an issue related to parole. (*See* Docket No. 13-5, at 11–12, 24.)  On January 4, 2017, the Texas Court of Criminal Appeals denied the application without written order.  (*See* Docket No. 13-3, at 1; *see also* Texas Court of Criminal Appeals, http://search.txcourts.gov/Case.aspx?cn=WR-70,885-14&coa=coscca (last visited Feb. 10, 2020.)

- The Board has never provided or disclosed any findings or evidence related to its denials of release to DMS.

(Docket No. 1 at 6–7.)

On September 28, 2018, Petitioner filed a document titled "Permission to Supplement *Gutierrez v. Davis* #:7-18-cv-00287 Pending Court Record Authorize by § 2254(b)(1)(B)(i), (ii); [illegible] w/ supported exhibits[.]" (Docket No. 2.)  In this filing, Petitioner requests permission to supplement his § 2254 petition and add a new claim challenging the constitutionality of his 2008 DWI conviction.  (*See id.*)

Respondent has filed a motion for summary judgment, arguing that Petitioner's claims should be dismissed because they are partially successive, partially time-barred, partially unexhausted, and ultimately without merit.[5]  (Docket No. 8.)  Petitioner has filed objections to the motion.[6]  (Docket No. 20.)

## II.  ANALYSIS

A.      **Pro Se Pleadings**

Pro se pleadings are held to less stringent standards than those drafted by attorneys.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  Pleadings filed by a pro se litigant are entitled to a liberal

---

[5] By an order dated November 26, 2018, the undersigned directed Respondent to file an answer or other response to Petitioner's habeas corpus petition (Docket No. 1.)  (*See* Docket No. 6.)  It appears that in an abundance of caution, Respondent also responded to Petitioner's new claim, which he asserted for the first time in Petitioner's motion to supplement.  (*See* Docket No. 2.)  Respondent argues that Petitioner's new claim is successive.  (*See* Docket No. 8.)  For the reasons stated *infra* Part II.B, Petitioner's motion to supplement should be denied as futile.

[6] Although Petitioner has filed an objection to Respondent's motion for summary judgment, that filing mainly addresses Petitioner's underlying 2008 DWI conviction.  As explained *infra* Part II.B, Petitioner's attempt to bring a claim challenging his DWI conviction (Docket No. 2) qualifies as second or successive petition, and therefore the Court has no jurisdiction to consider it.  *See* 28 U.S.C. § 2244(b)(1).

construction. *United States v. Pena*, 122 F.3d 3, 4 (5th Cir. 1997) (citing *Nerren v. Livingston Police Dep't*, 84 F.3d 469, 473 n.16 (5th Cir. 1996)).

**B.      Second or Successive Petition**

Petitioner's motion to supplement requests add a new claim challenging the constitutionality of his 2008 DWI conviction. (Docket No. 2.) Petitioner has previously filed a federal habeas petition challenging his 2008 DWI conviction. (*See Gutierrez v. Thaler*, Case No. 6:10-cv-47 (S.D. Tex., Victoria Div.). That petition was denied. (*Id.* at Docket Nos. 62, 63, 72.)

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a second or successive habeas application may not be filed unless "the applicant . . . move[s] in the appropriate court of appeals for an order authorizing the district court to consider the application." 28 U.S.C. § 2244(b)(3)(A). If a petitioner has not received the proper authorization from the appropriate court of appeals to file a second or successive § 2254 petition, then the district court lacks jurisdiction to consider the merits of the second or successive petition. *United States v. Key*, 205 F.3d 773, 774 (5th Cir. 2000) (per curiam).

Here, Petitioner's attempt to add a claim challenging his 2008 DWI conviction constitutes a second or successive § 2254 petition. Because the Court lacks jurisdiction to consider that claim, Petitioner's motion to supplement should be denied. If Petitioner wishes to further pursue this claim, he must first seek authorization from the Court of Appeals for the Fifth Circuit. *See* 28 U.S.C. § 2244(b)(3)(A).

**C.      Statute of Limitations and Exhaustion of State Remedies**

Respondent notes that Petitioner's challenges to his February 3, 2016, and December 15, 2016, DMS denials are untimely. (*See* Docket No. 8, at 12–17.) Respondent argues that neither statutory nor equitable tolling applies and, thus, Petitioner's claims challenging the Board's

February 3, 2016, and December 15, 2016, adverse decisions are subject to dismissal as untimely. Respondent also argues that Petitioner's challenges to all four of his DMS denials are unexhausted and thus could be dismissed for this reason a well. (*See id.* at 18–21.)

As explained by Respondent in its motion for summary judgment, two of Petitioner's claims challenging his DMS denials appear subject to dismissal on timeliness grounds and all four appear subject to dismissal for failure to exhaust administrative remedies. More fundamentally, however, habeas relief should be denied because Petitioner cannot demonstrate a constitutional violation in this case, as explained below. *See* 28 U.S.C. § 2254(b)(2) (a § 2254 petition "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").

**D.   AEDPA Standard of Review**

Federal law authorizes a court to "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Federal habeas proceedings must honor the "presumption of finality and legality [that] attaches to [a petitioner's] conviction and sentence." *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983), *overruled in part on other grounds*, *Lindh v. Murphy*, 521 U.S. 320 (1997).

Since 1996, federal courts have given effect to the traditional limits on habeas corpus review through the deferential standard mandated by the AEDPA, which "embodies the principles of federalism, comity, and finality of judgments." *Evans v. Cockrell*, 285 F.3d 370, 374 (5th Cir. 2002). The AEDPA "substantially restricts the scope of federal review of state criminal court proceedings." *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000). "[Section] 2254(d)'s 'highly deferential standard for evaluating state-court rulings' . . . demands that state court

decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997)).

Under the AEDPA, a federal court cannot grant habeas relief on issues adjudicated on the merits in state court unless (1) the legal determinations or mixed legal and factual adjudications are contrary to, or an unreasonable application of, clearly established federal law; or (2) the state factual decisions are unreasonable in light of the evidence. *See* 28 U.S.C. § 2254(d)(1) & (2); *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000).

**E.     Due Process Claims**

Although stated as several grounds for relief, Petitioner's claims all allege that the Board's decisions denying him release to discretionary mandatory supervision violated his Due Process rights under the Fourteenth Amendment.

In Texas, there are two ways in which an inmate becomes eligible for early release from prison: the first is by "parole" and the second is by "mandatory supervised release." *Teague v. Quarterman*, 482 F.3d 769, 774 (5th Cir. 2007). "Parole . . . is 'the discretionary and conditional release of an eligible inmate sentenced to the institutional division so that the inmate may serve the remainder of the inmate's sentence under the supervision of the pardons and paroles division.'" *Teague*, 482 F.3d at 774 (quoting Tex. Gov't Code § 508.001(6)).  Because parole is entirely discretionary, there is no liberty interest in parole that is protected by the Due Process Clause. *See Teague*, 482 F.3d at 774; *Orellana v. Kyle*, 65 F.3d 29, 31–32 (5th Cir. 1995).

Mandatory supervision, on the other hand, is "the release of an eligible inmate sentenced to the institutional division so that the inmate may serve the remainder of the inmate's sentence not on parole but under the supervision of the pardons and paroles division." Tex. Gov't Code § 508.001(5).  In contrast to parole, an inmate's release to mandatory supervision is required when

the "actual calendar time the inmate has served plus any accrued good conduct time equals the term to which the inmate was sentenced." Tex. Gov't Code § 508.147(a); *Jackson v. Johnson*, 475 F.3d 261, 263, n.1 (5th Cir. 2007). An inmate may not be released to mandatory supervision, however, if (among other things) the parole panel determines that (1) the inmate's accrued good conduct time is not an accurate reflection of the inmate's potential for rehabilitation; and (2) the inmate's release would endanger the public. *See* Tex. Gov't Code § 508.149.

Both the Fifth Circuit and Texas courts have held that the mandatory supervision scheme creates a protected liberty interest entitled to minimum due process protection. *See, e.g., Teague,* 482 F.3d at 776; *Ex parte Geiken*, 28 S.W.3d 553, 557–58 (Tex. Crim. App. 2000). In this context, constitutional due process requires that an eligible inmate be provided "notice and a meaningful opportunity to be heard." *Ex parte Geiken*, 28 S.W.3d 553 at 560 (citing *LaChance v. Erickson*, 522 U.S. 262, 266 (1998)). In the normal case, an inmate must be given notice of the month and year in which he will be reviewed for release on mandatory supervision at least thirty days before the review takes place. *Ex parte Retzlaff*, 135 S.W.3d 45, 50 (Tex. Crim. App. 2004). If release is denied, "the inmate must be informed in what respects he falls short of qualifying for early release." *Ex parte Geiken*, 28 S.W.3d at 560. Due process, however, does not require a live hearing before the Board, nor does it "require that the Board provide the particulars in the inmate's file upon which it rested the decision to deny release." *Id.* (citations omitted); *see also Boss v. Quarterman*, 552 F.3d 425, 426, 429 (5th Cir. 2008) (holding inmate received due process when the Board's decision denying release to DMS listed statutory reasons for the denial but did not offer any evidence from the record to support its findings); *Ramirez v. Stephens*, No. V-15-47, 2015 WL 9303122, at *2–3 (S.D. Tex. Dec. 22, 2015) (rejecting petitioner's argument that the Board's failure to make "specific findings" when denying release to DMS violated due process);

8

*Hogan v. Davis*, No.A-16-CA-421-RP, 2016 WL 4398543, at *4 (W.D. Tex. Aug. 17, 2016) (explaining that the Board is not required to produce evidence in support of its decision denying release to DMS) (citing *Boss*, 552 F.3d at 428–29), *report and recommendation adopted*, No. 1:16-CV-421-RP, 2017 WL 401277 (W.D. Tex. Jan. 30, 2017).

Here, Petitioner does not claim that he did not receive notice or an opportunity to be heard prior to the Board's decisions. In fact, the record indicates that Petitioner received notice, an opportunity to be heard, and information as to why he did not qualify for release. In the Notice of Parole Panel Decision dated February 3, 2016, the Board provided the statutory reasons for its decision denying Petitioner's release to discretionary mandatory supervision. (*See* Docket No. 9-1, at 2.) In this same notice, the Board informed Petitioner that his next review date for release to DMS was scheduled for February 2017.[7] (*See id.*) The same procedure was followed for the Board decisions dated December 15, 2016, November 3, 2017, and August 13, 2018. Specifically, for each of those later Board decisions denying release to DMS, Petitioner was informed of the statutory reasons for the Board's denial of release to DMS, as well as of the month and year of the

---

[7] The parties did not provide a copy of the Board's notice of the initial discretionary mandatory review regarding the February 3, 2016, decision. That notice serves to inform an inmate that the Board will decide whether to grant or deny his release to DMS and that if the inmate wishes to provide any additional information, he is to do so by a date certain. But Respondent did provide a copy of Board's decision from that review and all subsequent reviews; as noted above, each of those decisions include a notice of the next review date. Thus, even if Petitioner was not given notice of the February 2016 review, he *was* afforded proper notice prior to each of the subsequent three Board reviews. Significantly, Petitioner, does not claim that he was *not* provided thirty days' notice prior to the Board's February 3, 2016, decision, nor does he suggest that he was prejudiced by any lack of notice. *See Keough v. Tate Cnty. Bd. of Educ.*, 748 F.2d 1077, 1083 (5th Cir. 1984) ("To establish a denial of procedural due process, a party must show substantial prejudice."); *Sula v. Stephens*, No. H-13-3474, 2014 WL 4929297, at *5 (S.D. Tex. Sept. 30, 2014) (explaining that "[e]ven if a notice is deficient, 'to establish a denial of procedural due process, petitioner must show substantial prejudice' stemming from the deficiency") (quoting *Davis v. Mann*, 882 F.2d 967, 975 (5th Cir. 1989)). In any event, any claim alleging lack of notice for the February 2016 review would be clearly time barred.

next scheduled review date. (*See id.* at 3–5). Each of these notices were provided to Petitioner at least thirty days before the next scheduled review. (*See id.* at 3–5.) Contrary to Petitioner's argument, the Board was not required to provide or disclose any findings or evidence related to its denial of release to DMS. *See Boss*, 552 F.3d at 426, 429 (holding that inmate received due process when the Board's panel decision denying release to DMS listed statutory reasons for the denial but did not offer any evidence from the record to support its findings); *Hogan*, 2016 WL 4398543, at *4 (rejecting petitioner's challenge that the Board's reasoning and the guidelines it follows are too vague or arbitrary) (citing *Ex parte Geiken*, 28 S.W.3d at 557).

In short, Petitioner was afforded all the process that he was due. Petitioner has failed to show that the state courts' rejection of his claims is contrary to, or an unreasonable application of, clearly established federal law. *See* 28 U.S.C. § 2254(d). Petitioner's claims should thus be dismissed.

## III.  CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends that Respondent's Motion for Summary Judgment (Docket No. 8) be GRANTED, that Petitioner's § 2254 habeas petition (Docket No. 1) be DENIED, and that this action be DISMISSED. For the reasons discussed below, it is further recommended that Petitioner be denied a certificate of appealability.

## CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability[.]" 28 U.S.C. § 2253(c)(1)(A). Although Petitioner has not yet filed a notice of appeal, the § 2254 Rules instruct that the District Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, RULES GOVERNING SECTION 2254 PROCEEDINGS. Because the

undersigned recommends the dismissal of Petitioner's § 2254 action, it is necessary to address whether Petitioner is entitled to a certificate of appealability (COA).

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). To warrant a COA as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (applying *Slack* standard to a COA determination in the context of § 2255 proceedings). An applicant may also satisfy this standard by showing that "jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *see also Jones*, 287 F.3d at 329. As to claims that a district court rejects solely on procedural grounds, the prisoner must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Here, Petitioner's § 2254 claims should be dismissed on their merits. For the reasons explained in this report, the undersigned believes that reasonable jurists would not find debatable or wrong the conclusion that Petitioner's claims lack merit, nor are the claims adequate to deserve encouragement to proceed further. Accordingly, Petitioner is not entitled to a COA.

## NOTICE TO THE PARTIES

The Clerk shall send copies of this Report and Recommendation to Petitioner and counsel for Respondent, who have fourteen (14) days after receipt thereof to file written objections

pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in this Report and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

DONE at McAllen, Texas on March 9, 2020.

Peter E. Ormsby
United States Magistrate Judge